IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MEL TYRONE EDWARD,                        No. CIV S-10-0979-JAM-CMK-P

      Plaintiff,

  vs.                                                       ORDER

M.D. McDONALD, et al.,

      Defendants.

_____ /

      Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

      The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne,

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: M.D. McDonald (prison warden); D. Swingle (chief medical officer); D. Medina (nurse); P. Statti (correctional officer); R. Dreith (correctional officer); R. Ingwerson (correctional officer); J. Petersen (correctional officer); D. Hogan (correctional officer); M. Darst (correctional officer); T. Hays (correctional officer); A. Arnold (correctional officer); Martin (correctional officer); J. Crowhurst (correctional officer); J. Quiring (correctional officer); and K. Richter (prison ombudsman).

Plaintiff claims that in January 2008, after returning to High Desert State Prison from an out-to-court transfer, he was harassed in retaliation.  Specifically, he states that defendants Petersen, Hogan, Darst, Hays, Crowhurst, and Arnold charged plaintiff with "excessive" rules violations reports ("RVRs").  He states that the "RVRs would be written against the Plaintiff for various Minor Rule violations in a Manipulative manner, for the sole purpose of making Plaintiff suffer Loss Of Prison Privileges, and Manipulation of Plaintiff's Credit Earning Status."  Plaintiff adds: "Defendants Ingwerson, Quiring, and Hogan would then go on to conduct Hearings on the Merits and Evidence of all above mentioned RVRs in an Illegal and Manipulative manner, ignoring all Evidence and Witness Statements, including proper procedure all for the purpose of finding Plaintiff Guilty of said RVRs, and Imposing a Disposition upon Plaintiff of Loss Of Prison Privileges, and Credit Earning Status."

Plaintiff also contends that defendants denied him access to adequate medical care. He claims that defendants Petersen, Hogan, Martin, and Arnold harassed him "by Cancelling Orthopedic Medical Access Plaintiff needs to maintain Good Health, and be free of Pain and Suffering, such as Treatments for Pain Management such as Daily Showers and Trigger Point Injections. . . ." Plaintiff states that defendant Medina "rewrote" his medical authorizations and cancelled treatments that had been approved earlier. He adds that such conduct was also approved by defendant Swingle by way of a "CDCR-128 Comprehensive Chrono." Plaintiff adds:

> . . . The same thing was done when Defendant Arnold wanted Plaintiff's Orthopedic access to wear Tennis Shoes changed, All for the purpose of legitimizing a RVR Defendant Arnold wrote against Plaintiff. Also, when Defendant Martin wanted Plaintiff taken off regular Diabetic Treatments, as a result of a CDCR-602 Appeal Grievance Plaintiff Authored against him, and also how He didn't want to Escort Plaintiff to the Facility Clinic Daily for Diabetic Treatments during Lock Downs.

Plaintiff states that defendants Swingle and Medina "went on to Cancel other Medically Necessary Authorizations Plaintiff had prior to Transferring to HDSP, such as Special Diets needed to maintain Diabetic and hypertension Conditions, including a severe Allergy to Peanuts."

Finally, plaintiff claims that various inmate grievances filed regarding the foregoing were not fully processed. He claims that defendants Dreith and Statti "violated Plaintiff's Due Process Rights by way of Manipulating the HDSP CDCR-602 Appeals Process." Plaintiff alleges that these defendants deliberately thwarted his access to the grievance process for the purpose of preventing him from exhausting his claims. Plaintiff states that he wrote the prison ombudsman – defendant Richter – concerning the situation with his grievances, but that Richter failed to "ever show up for [a] promised interview." He adds that, on a separate occasion, defendant McDonald later refused to allow plaintiff to meet with Richter.

///

///

## II.  DISCUSSION

Plaintiff alleges that defendants' conduct violated his rights under the First Amendment to be free from retaliation and under the Eighth Amendment to adequate medical care.  He also appears to allege constitutional violations relating to the prison grievance process.  Additionally, the complaint seems to allege that proper procedures were not followed in the course of disciplinary proceedings.  Plaintiff names supervisory personnel as well as various correctional staff as defendants.  The court finds that the complaint suffers from a number of defects, outlined below.

### A.   **Supervisory Liability**

Plaintiff names two defendants who hold supervisory roles – McDonald, the prison warden, and Swingle, the prison chief medical officer.  Supervisory personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948.

Here, while plaintiff alleges conduct on the part of Swingle, he makes no specific allegations as against McDonald. It appears that the sole theory of liability as to McDonald is that he is responsible for the conduct of his subordinates. As outlined above, this theory does not state a claim against McDonald. Plaintiff will be given an opportunity to amend to allege specific conduct on the part of McDonald that caused or contributed to the alleged constitutional violations.

**B.      Retaliation**

Plaintiff claims that he was harassed in retaliation following his return from out-to-court status in January 2008. In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

/ / /

/ / /

/ / /

Here, plaintiff alleges that he was harassed in retaliation. Plaintiff has not, however, alleged a specific link between the alleged retaliatory harassment and the exercise of a constitutional right. While plaintiff states that the retaliation began after he returned from out-to-court status, he does not allege that such harassment occurred because of litigation being pursued by plaintiff. Thus, the complaint fails to allege that defendants' conduct was motivated by plaintiff participating in a protected activity, such as litigation. Plaintiff will be provided an opportunity to amend to allege specific facts indicating that defendants knew that plaintiff had engaged in protected activity and that, because of that activity, defendants harassed him.

## C. Grievance Process

Plaintiff appears to allege that defendants Dreith and Statti are liable with respect to their handling of plaintiff's inmate grievances. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

///

///

Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. Such a claim would be based on the theory that interference with the grievance process resulted in a denial of the inmate's right to access to the courts. This right includes petitioning the government through the prison grievance process. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

In this case, plaintiff merely alleges that defendants interfered with his ability to present grievances. He does not, however, allege that such interference resulted in any actual injury with respect to contemplated or ongoing habeas or civil rights litigation. To state a claim, the interference complained of would have had to result in plaintiff's being unable to present or pursue a habeas or civil rights claim. Plaintiff has not indicated any such inability. Plaintiff will

7

be provided an opportunity to amend to allege facts, if any, showing how, if at all, the alleged interference with the grievance process resulted in an actual injury.

### D. Prison Disciplinary Proceedings

Plaintiff alleges that he was subject to various disciplinary charges based on false rules violation reports prepared in retaliation. He further alleges that, in the course of hearings on these charges, evidence was ignored and punishments were imposed which included "Loss of Prison Privileges, and Credit Earning Status." When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam). Thus, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, or the result of a prison disciplinary hearing, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding. See Edwards v. Balisok, 520 U.S. 641, 646 (1987) (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of the underlying prison disciplinary sanction); Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 not cognizable because allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's favor).

In this case, if plaintiff was assessed loss of good-time credits, then any due process claim relating to the disciplinary process would not be cognizable until the disciplinary finding had first been set aside or overturned. Here, plaintiff alleges that the punishment imposed on him impacted his "Credit Earning Status." It is unclear whether this refers to good-

time credit and, if so, whether such credits were lost as a result of a prison disciplinary guilty finding.  Plaintiff will be provided an opportunity to amend the complaint to clarify the facts surrounding this potential claim.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, if plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state a cognizable claim, specifically plaintiff's medical care claim, if no amended complaint is filed within the time allowed therefor, the court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable medical care claim.

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that plaintiff may file an amended complaint within 30 days of the date of service of this order.

DATED: November 9, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE