IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MEL TYRONE EDWARD,                           No. CIV S-10-0979-JAM-CMK-P

      Plaintiff,

  vs.                                        FINDINGS AND RECOMMENDATIONS

M.D. McDONALD, et al.,

      Defendants.

_____/

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's complaint (Doc. 1).

On December 13, 2010, the court issued a screening order pursuant to 28 U.S.C. § 1915A(a) addressing the complaint. The court stated:

> Plaintiff alleges that defendants' conduct violated his rights under the First Amendment to be free from retaliation and under the Eighth Amendment to adequate medical care. He also appears to allege constitutional violations relating to the prison grievance process. Additionally, the complaint seems to allege that proper procedures were not followed in the course of disciplinary proceedings. Plaintiff names supervisory personnel as well as various correctional staff as defendants. The court finds that the complaint suffers from a number of defects, outlined below.

The court then proceeded to discuss various defects identified in the complaint. First, as to the liability of supervisors, the court stated:

Plaintiff names two defendants who hold supervisory roles – McDonald, the prison warden, and Swingle, the prison chief medical officer. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948.

Here, while plaintiff alleges conduct on the part of Swingle, he makes no specific allegations as against McDonald. It appears that the sole theory of liability as to McDonald is that he is responsible for the conduct of his subordinates. As outlined above, this theory does not state a claim against McDonald. Plaintiff will be given an opportunity to amend to allege specific conduct on the part of McDonald that caused or contributed to the alleged constitutional violations.

As to plaintiff's First Amendment retaliation claim, the court stated:

Plaintiff claims that he was harassed in retaliation following his return from out-to-court status in January 2008. In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve

a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

> Here, plaintiff alleges that he was harassed in retaliation. Plaintiff has not, however, alleged a specific link between the alleged retaliatory harassment and the exercise of a constitutional right. While plaintiff states that the retaliation began after he returned from out-to-court status, he does not allege that such harassment occurred because of litigation being pursued by plaintiff. Thus, the complaint fails to allege that defendants' conduct was motivated by plaintiff participating in a protected activity, such as litigation. Plaintiff will be provided an opportunity to amend to allege specific facts indicating that defendants knew that plaintiff had engaged in protected activity and that, because of that activity, defendants harassed him.

Next, the court discussed plaintiff's apparent claim related to the prison grievance process as follows:

> Plaintiff appears to allege that defendants Dreith and Statti are liable with respect to their handling of plaintiff's inmate grievances. Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process). Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances. Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).
>
> Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. Such a claim would be based on the theory that interference with the grievance process resulted in a denial of the inmate's right to access to the courts. This right includes petitioning the government through the prison grievance process. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of

3

|   |   |
|---|---|
| 1 | confinement.  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and |
| 2 | § 1983 suits.  See id. at 353 n.3 & 354-55.  Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, |
| 3 | and not a right to discover claims or to litigate them effectively once filed.  See id. at 354-55. |
| 4 | As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury.  See id. at 349.  "Actual |
| 5 | injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous |
| 6 | claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).  Delays in providing legal materials or assistance which result in |
| 7 | prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes.  Lewis, 518 U.S. at 362. |
| 8 | In this case, plaintiff merely alleges that defendants interfered with his ability to present grievances.  He does not, however, |
| 9 | allege that such interference resulted in any actual injury with respect to contemplated or ongoing habeas or civil rights litigation.  To state a claim, |
| 10 | the interference complained of would have had to result in plaintiff being unable to present or pursue a habeas or civil rights claim.  Plaintiff has not |
| 11 | indicated any such inability.  Plaintiff will be provided an opportunity to amend to allege facts, if any, showing how, if at all, the alleged |
| 12 | interference with the grievance process resulted in an actual injury. |
| 13 | The court next addressed plaintiff's apparent claim related to the prison disciplinary process: |
| 14 | Plaintiff alleges that he was subject to various disciplinary charges based on false rules violation reports prepared in retaliation.  He |
| 15 | further alleges that, in the course of hearings on these charges, evidence was ignored and punishments were imposed which included "Loss of |
| 16 | Prison Privileges, and Credit Earning Status."  When a state prisoner challenges the legality of his custody and the relief he seeks is a |
| 17 | determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole |
| 18 | federal remedy is a petition for a writ of habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d |
| 19 | 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam).  Thus, where a § 1983 action seeking |
| 20 | monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying |
| 21 | conviction or sentence, or the result of a prison disciplinary hearing, such a claim is not cognizable under § 1983 unless the conviction or sentence has |
| 22 | first been invalidated on appeal, by habeas petition, or through some similar proceeding.  See Edwards v. Balisok, 520 U.S. 641, 646 (1987) |
| 23 | (holding that § 1983 claim not cognizable because allegations of procedural defects and a biased hearing officer implied the invalidity of |
| 24 | the underlying prison disciplinary sanction); Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 not cognizable because |
| 25 | allegations were akin to malicious prosecution action which includes as an element a finding that the criminal proceeding was concluded in plaintiff's |
| 26 | favor). |

1  |  In this case, if plaintiff was assessed loss of good-time credits, then any due process claim relating to the disciplinary process would not be cognizable until the disciplinary finding had first been set aside or overturned. Here, plaintiff alleges that the punishment imposed on him impacted his "Credit Earning Status." It is unclear whether this refers to good-time credit and, if so, whether such credits were lost as a result of a prison disciplinary guilty finding. Plaintiff will be provided an opportunity to amend the complaint to clarify the facts surrounding this potential claim.

The court concluded that plaintiff's allegations relating to medical care stated a cognizable Eighth Amendment claim (based on his allegations against defendants Petersen, Hogan, Martin, Arnold, Medina, and Swingle). Plaintiff was provided an opportunity to amend as to the defective claims and advised that, if he chose not to do so, the court would issue findings and recommendations for dismissal of the defective claims and such orders as are necessary for service of plaintiff's Eighth Amendment claim on the remaining defendants.

Rather than filing an amended complaint, plaintiff filed a document entitled "Plaintiff's Response to Order" (Doc. 15). In his "response," plaintiff states that he agrees with the court's screening order "[f]or the most part." In particular, he states that he "drops" McDonald as a defendant. He also "drops" his retaliation claim "against all defendants. . . ." Regarding his claim arising from the prison disciplinary process, plaintiff "respectfully agrees with the court's order" because he was in fact assessed a loss of good-time credits.

Plaintiff does not agree with the court's analysis of his claim relating to the grievance process (against defendants Statti and Dreith). He states that he "is not simply making claims that Defendants Dreith and Statti, who were Appeals Coordinators at the time of the offenses, would not process Plaintiff's appeals." Rather, he states that defendants Dreith and Statti "deliberately and even maliciously refused to process appeals submitted to them against Defendants and other H.D.S.P. staff to 'exhaust remedies' on the appeals, to hamper Plaintiff's ability to properly bring 42 U.S.C. 1983 claims against them. . . ."

Based on the allegations in the complaint, as well as plaintiff's "response" to the court's screening order, it is clear that plaintiff's theory is that defendants' alleged interference

5

with the grievance process made it more difficult, if not impossible, to exhaust future § 1983 claims.  As discussed in the screening order, such a theory is cognizable but only where an actual injury is alleged.  Specifically, plaintiff must allege facts indicating prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim.  Plaintiff has not alleged such facts, or suggested in his "response" that he could do so in an amended complaint.

Because plaintiff cannot state a claim based on handling of his grievances, and because he agrees with the court's analysis of the other defects identified in the screening order, this action should be limited to plaintiff's Eighth Amendment medical care claim as against defendants Petersen, Hogan, Martin, Arnold, Medina, and Swingle.  All other claims and defendants should be dismissed.

Based on the foregoing, the undersigned recommends that:

1. This action proceed on plaintiff's Eighth Amendment medical care claim against defendants Petersen, Hogan, Martin, Arnold, Medina, and Swingle only; and

2. All other defendants and claims be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 10, 2011

/s/ Craig M. Kellison
_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE